Eugene Y. Turin (IL Bar No. 6317282)
(*pro hac vice to be submitted*)
eturin@mcgpc.com
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895

James A. Tabb (CA Bar No. 208188)
jimmy@zaveritabb.com
ZAVERI TABB, APC
402 West Broadway, Suite 1950
San Diego, CA 92101
Tel: (619) 831-6987
Fax: (619) 239-7800

*Attorneys for Plaintiff and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY OLIVER, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>FIRST CENTURY BANK, N.A., and STORED VALUE CARDS, INC. (d/b/a NUMI FINANCIAL),<br><br>Defendants. | Case No. **'17CV0620 MMA KSC**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1) Violation of the Fifth Amended pursuant to 42 U.S.C. § 1983<br>2) Conversion<br>3) Unjust Enrichment<br>4) Violation of Cal. Bus. & Prof. Code § 17200<br><br>DEMAND FOR JURY TRIAL |

**Class Action Complaint**

# CLASS ACTION COMPLAINT

Plaintiff Anthony Oliver ("Plaintiff") brings this class action complaint against Defendants First Century Bank, N.A. ("First Century") and Stored Value Cards, Inc. (d/b/a Numi Financial) ("Numi Financial") (together "Defendants"), on behalf of himself and a nationwide class of individuals seeking redress from Defendants for their unlawful practice of deducting unauthorized fees from funds due back to individuals who were taken into custody by law enforcement officials.  Defendants' practice of deducting unauthorized fees from funds that were taken from detained individuals is well documented as being an unjust and abusive practice.  *See, e.g.*, www.nbcnews.com/business/consumer/inmates-charged-fee-after-leaving-jail-n329151.  However, Defendants have not done anything to remedy their actions or refund monies that they unlawfully took from funds that they were charged with disbursing back to the rightful owners upon release from custody.  On behalf of himself and the proposed class of individuals who had unauthorized fees deducted by Defendants from funds that they were entitled to receive back in full, Plaintiff seeks damages, punitive damages, restitution, and injunctive relief against Defendants for their unlawful practices.  For his class action complaint, Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

1.     This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) and (d), because: (i) at least one member of the putative class is a citizen of a state different from any Defendant; (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs; and (iii) none of the exceptions under that subsection applies to the instant action.

**Class Action Complaint**     2

2. This Court also has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises in part under 42 U.S.C. § 1983, and this Court may exercise supplemental jurisdiction over the state law claims alleged pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Southern District of California because Defendants are subject to personal jurisdiction in this District, as Defendant Numi Financial's headquarters are located in this District, Defendants transact business in this District, and a substantial part of the events in this action occurred in this District.

## PARTIES

4. Plaintiff Anthony Oliver is a citizen of the State of Georgia.

5. Defendant Stored Value Cards, Inc. (d/b/a Numi Financial) is a California corporation with its national headquarters in Carlsbad, California. Numi Financial is a provider of debit card processing services for disbursement of inmate funds on behalf of law enforcement agencies across the country. Numi Financial is registered and conducts business in California, including in this District, and conducts business elsewhere throughout the United States.

6. Defendant First Century Bank, N.A. is a national banking association headquartered in Georgia that provides banking and financial services and products, including pre-paid debit cards, to consumers and businesses throughout the country, including in California. First Century maintains offices in California, is registered and conducts business in California, including in this District, and conducts business and maintains offices elsewhere throughout the United States. Defendant Numi Financial issued its pre-paid debit cards through, and in partnership with, Defendant First Century.

**Class Action Complaint**   3

**COMMON ALLEGATIONS OF FACT**

7. The significant profits raised by corporations from prisons and the ever-growing prisoner population in the United States is a well-documented source of concern. While privately-run correctional facilities that obtain large government contracts and avoid compliance with state and federal regulations are the most well-known example of this, a number of companies have recently pursued other business ventures that also seek to profit directly from individuals who are being held in the custody of law enforcement agencies.

8. For example, a number of prisons now contract with private companies that charge inmates substantial fees to contact their family members or attorneys by email. *See, e.g.,* http://www.ibtimes.com/prisons-are-making-inmates-pay-email-their-families-lawyers-2281016.

9. Critical to how such for-profit companies have come to operate in hundreds of prisons across the country is that, despite correctional facilities and detention centers typically being operated by the state for the benefit of the public and its safety, the for-profit entities offer contracts that provide for significant compensation to these facilities, usually in the form of a set percentage of the total revenue collected by the entity, in addition to any costs-savings realized by the facility by utilizing the service.

10. Seeing a similar opportunity to profit from a previously untapped source of revenue – the processing of confiscated funds when an individual is taken into custody and subsequently released – Defendants developed a debit card scheme that they marketed to hundreds of detention facilities across the country.

11. Specifically, whenever an individual is taken into custody for any period of time, regardless of the type or severity of the charged crime, and regardless of whether they are later released or found innocent, they go through

**Class Action Complaint**    4

1 a booking process whereby their property, including any clothes, money, and other possessions on their persons, are taken from them and stored until their release.

12. Until very recently, most local jails and larger correctional facilities would collect any cash money that an individual had on them, and upon release would either provide that same exact amount back in either cash or a check to be cashed.

13. Defendants' service purports to offer law enforcement officials a more streamlined process for processing inmate funds by automatically providing a pre-activated debit card containing all of the funds owed back to the inmate upon his/her release.

14. When an individual is booked at a detention facility utilizing Defendants' service, they are required to deposit all of their cash money into an ATM machine on premises.

15. Once the individual's funds are deposited they are transferred to an inmate trust account maintained on their behalf which they can use during their time in custody to buy certain items, make telephone calls, or send emails. Inmates are also permitted to add funds to their inmate trust account while in custody.

16. Upon release, whatever funds are remaining in their inmate trust account are deposited onto a "pre-paid" debit card issued by Defendants.

17. However, unlike prior methods for disbursing individuals' funds by cash or check, the debit cards provided by Defendants come with an array of fees and other charges – including ATM fees, maintenance fees, and purchase transaction fees – that are automatically deducted by Defendants without the individual's consent.

**Class Action Complaint** 5

18. These fees are specifically negotiated with and approved by the correctional and detention facilities that utilize Defendants' service and can vary in the amounts deducted from the inmate trust account funds deposited onto the card. Typical fees automatically deducted by Defendants can include a $2.50 *weekly* service fee, a $0.95 fee for each declined transaction, as well as transaction fees as high as $2.95 for *each* purchase made with the pre-paid debit card.

19. Most importantly, individuals detained at the local jails, correctional facilities, and other institutions that utilize Defendants' debit card service are not given any alternative option other than receiving their funds back in the form of a pre-paid debit card issued by Defendants and are effectively coerced into accepting the pre-paid debit cards without their consent.

20. Accordingly, individuals are put in the unenviable position of having unauthorized, excessive maintenance, service, and other fees automatically taken from their own funds, even though such individuals have not entered into any contract with Defendants and have not voluntarily deposited their funds with Defendants.

21. Defendants' debit card service is used by hundreds of jails and other detention facilities across the country, and Defendants provide tens of thousands of pre-paid cards a year to individuals detained at their customers' facilities.

## FACTS SPECIFIC TO PLAINTIFF

22. Mr. Oliver resided in Savannah, Georgia on or about October 28, 2016 when he was arrested.

23. Mr. Oliver was taken into custody and booked at the Chatham County Jail in Savannah, Georgia that same day.

24. In the process of being booked, law enforcement officers confiscated all cash funds that were on Mr. Oliver's person.

**Class Action Complaint**         6

25. The law enforcement officials at the Chatham County Jail then had Mr. Oliver take all of his cash funds and deposit them into an ATM machine. Mr. Oliver was not given a choice as to whether he could have the money returned to him as a check upon being released, or simply have it returned as cash. Nor was Mr. Oliver given any paperwork to complete or sign, and he was not even allowed to keep the receipt generated by the ATM for the transaction.

26. The funds deposited by Mr. Oliver into the ATM were then put in his inmate trust account, which he could use to buy certain items in the jail, as well as to pay for placing phone calls and transmitting emails.

27. Mr. Oliver was released from Chatham County Jail on or about December 22, 2016.

28. At the time of his release, Mr. Oliver had approximately $985.00 remaining in his inmate trust account. In the process of having the property that was confiscated from him returned, Mr. Oliver was handed a "Numi Financial" pre-paid debit card issued by Defendants. The law enforcement officials represented to Mr. Oliver that Defendants' pre-paid debit card contained the full amount of his remaining inmate account funds.

29. Mr. Oliver was not provided any paperwork regarding the terms and conditions governing his use of Defendants' debit card, all of the fees and charges associated with the card, a history of his purchases made while in custody, or any other information except for the ATM pin code necessary to use the card.

30. Upon being released, Mr. Oliver visited a local fast-food restaurant, where he used his card to purchase a meal. However, as Plaintiff later found out, Defendants deducted a $1.50 fee from his account as part of the transaction.

31. Afterwards, that same day, Mr. Oliver visited a Verizon store to pay for his cellular telephone bill. As Plaintiff eventually discovered, Defendants again deducted an additional $2.95 fee from his funds as part of the transaction.

32. The next day, on or about December 23, 2016, Mr. Oliver visited a Wells Fargo ATM to withdraw cash funds from the account. On top of the ATM transaction fee, Defendants deducted another $2.95 fee from his account for the withdrawal.

33. In addition to the transaction fees deducted by Defendants with every purchase from Plaintiff's account without his consent, Defendants also charged an unauthorized $2.50 *weekly* "maintenance" fee, beginning just 2 days after the card's activation—on or about December 24, 2016.

34. After taking out most of the funds in cash over the course of the week following his release, Mr. Oliver had approximately $20 left on the debit card.

35. Even though Mr. Oliver did not make any additional purchases or transactions using the debit card, when he called the 1-800 number listed on the back of the card several weeks later to check his account balance, he was informed that there were no funds remaining on the account. Upon hearing this information, Mr. Oliver attempted to log onto Defendants' website to check his account history and determine what fees Defendants had withdrawn from his account. However, Mr. Oliver was not allowed to log in because the card was now labeled as being "inactive."

36. Thus, not only was Mr. Oliver prohibited from checking the account history on his debit card to determine what fees Defendants had withdrawn from his account that led to the zero sum account balance, but he could not even access his prior transaction history.

37. Similarly, when Mr. Oliver was taken back into custody at the Chatham County Jail on or about February 2, 2017, he again was forced to deposit all of the cash funds that were on his person into an ATM machine.

**Class Action Complaint**      8

38. Upon his release on or about February 17, 2017, Mr. Oliver had $164.06 remaining in his inmate trust account which was again deposited without his knowledge or consent onto an identical "Numi Financial" pre-paid debit card issued by Defendants.

39. As with the other Numi Financial debit card that was issued to him, Plaintiff was charged unauthorized, excessive service fees for withdrawing funds from the card, including two sur-charges of $2.95 for withdrawing funds from an ATM – separate and in addition to any ATM transaction fees – and a $2.95 "weekly" "service charge" fee that started just four days after the card was activated.

40. Plaintiff never consented to any fees being deducted from his funds and was never given prior notice of all the fees and charges that applied to the pre-paid debit cards issued by Defendants.

41. Had Mr. Oliver been given a choice as to how he could receive his funds at the time of his release, he would have never chosen to have them deposited by Defendants on their pre-paid debit cards given the excessive service and transaction fees Defendants automatically deducted without his consent.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action on behalf of himself and a nationwide class (the "Class") defined as follows: all persons in the United States and its Territories who were taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, and upon release were given a "Numi Financial" pre-paid debit card containing any funds remaining on their inmate trust account and from which Defendants deducted any fees within four years prior to the filing of the original Complaint in this action.

43. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial

**Class Action Complaint** 9

experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

44. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

45. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

46. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

47. Defendants' pre-paid debit card service is used by hundreds of jails and other detention facilities across the country, and Defendants provide tens of thousands of pre-paid debit cards to released individuals every year. Accordingly, upon information and belief, there are at least tens of thousands of members of the Class, such that joinder of all members is impracticable.

48.  There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include, but are not limited to, the following:

(a)  Whether Defendants unlawfully deducted fees from the Class Members' funds;

(b)  Whether Defendants converted the funds belonging to the Class Members that were stored on Defendants' pre-paid debit cards when they deducted fees from the Class Members' funds;

(c)  Whether Defendants were unjustly enriched when they retained fees deducted from the Class Members' funds;

(d)  Whether Defendants' practice of deducting fees from Class Members' accounts constituted a violation of the Takings Clause of the Fifth Amendment;

(e)  Whether Defendants' practices constituted an "unlawful" or "unfair" business act or practice under the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*); and

(f)  Whether Plaintiff and the other Class Members are entitled to damages, punitive damages, restitution, and/or injunctive relief or other relief, and, if so, the nature/amount of such relief.

## FIRST CAUSE OF ACTION
**Violation of the Fifth Amendment Pursuant to 42 U.S.C. § 1983**
**(against Defendants First Century and Numi Financial)**

49.  Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50.  The Fifth Amendment, as enforced against the States through the Fourteenth Amendment, prohibits the "tak[ing]" of "private property" for "public use, without just compensation."

**Class Action Complaint**           11

51. Pursuant to the "takings clause" of the Fifth Amendment, Chatham County Jail, as well as all other state and federal correctional facilities that utilized Defendants' debit card service, were required to return all funds that were confiscated from detained individuals and maintained in their inmate trust accounts upon their release.

52. Chatham County Jail, as well as the other correctional facilities where Class Members were detained, contracted with and directed Defendants to handle and manage disbursement of all inmate trust account funds.

53. Accordingly, at all times relevant hereto, Defendants operated their debit card service under the color of law. As such, Defendants were at all times required to abide by the takings clause of the Fifth Amendment and return all of the inmate trust account funds deposited with them.

54. However, Defendants have violated the Fifth Amendment rights of Plaintiff and the other Class Members, and deprived them of their Constitutionally-protected interest in the cash funds maintained in their inmate trust accounts, by depositing such funds onto pre-paid debit cards and thereafter deducting unauthorized fees.

55. The fees deducted from Plaintiff's and the other Class Member's funds were specifically negotiated between Defendants and the Chatham County Jail – and their other customers where other Class Members were detained – and were implemented only with the guidance and approval of the federal and state entities that managed and operated these facilities.

56. As a result of Defendants' unlawful conduct, Plaintiff and the other Class Members have suffered actual damages in the amounts of the unlawful fees deducted from their funds, and pursuant to 42 U.S.C. § 1988(b) are also entitled to their reasonable attorneys' fees in prosecuting this claim.

## SECOND CAUSE OF ACTION
### Conversion
### (against Defendants First Century and Numi Financial)

57. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

58. Upon being taken into custody Plaintiff and the other Class Members had any cash funds in their possession deposited into an inmate trust account for safe keeping.

59. Upon release Plaintiff and the other Class Members were forced to have any funds maintained in their inmate trust account deposited onto Defendants' pre-paid debit cards for disbursement.

60. At no time did Plaintiff and the other members of the Class enter into any contract or agreement with Defendants, provide consent to have their funds deposited with Defendants, or agree to have any fees deducted from their funds by Defendants.

61. Nonetheless, Defendants have deducted various fees from Plaintiff's funds, as well as the funds of the other Class Members, and have permanently and wrongfully deprived Plaintiff and the other Class Members of those funds.

62. Defendants have never had any legal right to retain any portion of the Plaintiff's and other Class Members' inmate trust account funds deposited with them; and by retaining fees deducted from such funds, Defendants have unlawfully converted a portion of such funds.

63. Defendants' unlawful acts of conversion have caused actual damages in the amounts of the unauthorized fees converted by Defendants—in addition to interest thereon. Defendants actions were also oppressive and malicious, such that Plaintiff and the Class Members are entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
## Unjust Enrichment
### (against Defendants First Century and Numi Financial)

64. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

65. Upon being taken into custody Plaintiff and the other Class Members had any cash funds in their possession deposited into an inmate trust account for safe keeping.

66. Upon release Plaintiff and the other Class Members were forced to have any funds maintained in their inmate trust account deposited onto Defendants' pre-paid debit cards for disbursement.

67. Even though Plaintiff and the other Class Members had never entered into any contract with Defendants, never consented to have their funds deposited with Defendants, and never agreed to any fees being deducted from their funds by Defendants, Defendants nonetheless deducted unauthorized fees from Plaintiff's and the other Class Members' inmate trust account funds that were deposited with them.

68. Because Defendants deducted fees from Plaintiff's and the other Class Members' funds without any consent or authorization, exploited their position of advantage over such individuals who had no choice but to have their funds deposited with Defendants for disbursement, and violated their Fifth Amendment rights, it would be inequitable and unjust for Defendants to retain these wrongfully-obtained funds.

69. Plaintiff and the other Class Members have been harmed as a result of Defendants' unlawful and inequitable conduct, and are entitled to restitution in the amounts of the unauthorized fees taken by Defendants.

# FOURTH CAUSE OF ACTION

**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200** *et seq.*
**(against Defendants First Century and Numi Financial)**

70. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

71. Defendant Numi Financial is a California corporation with its headquarters located in California.

72. Defendant First Century similarly maintains offices in California and is registered and does business in California.

73. Upon information and belief, Defendants' business practices, including policies related to fees deducted from inmate trust account funds deposited onto Defendants' pre-paid debit cards, are created and implemented from Numi Financial's national headquarters in California, and apply to all of Defendants' pre-paid debit cards that are issued across the country.

74. California Business and Professions Code section 17200 *et seq.* (the "UCL") prohibits any "unlawful [or] unfair business act or practices."

75. Defendants have violated the unlawful prong of the UCL because they acted under the color of law when they deducted unauthorized and excessive fees from Plaintiff's and the other Class Members' funds in violation of their Fifth Amendment rights, and in violation of laws against conversion.

76. Defendants' conduct also violated the unfair prong of the UCL because Plaintiff and the other Class Members never entered into any contract with Defendants, never authorized Defendants to deduct any maintenance or service fees from their funds, and most importantly, did not voluntarily deposit their funds with Defendants. Defendants unfairly took advantage of Plaintiff's and the other Class Members' lack of options and exploited their position of power to their benefit and profit. Given that the funds were placed in a trust for

the benefit of Plaintiff and the other Class Members, such conduct may also constitute a breach of fiduciary duty owed by Defendants.

78. Plaintiff and the other members of the Class have lost money as a result of Defendants' unlawful and unfair conduct in the amounts of the fees deducted from their inmate trust account funds that were deposited with Defendants for disbursement. Plaintiff requests that this Court enter such orders or judgments as necessary to enjoin Defendants from continuing their unlawful and unfair practices and to restore to Plaintiff and the other Class Members all monies Defendants acquired through such conduct, pursuant to Cal. Bus. & Prof. Code § 17203.

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;
2. A determination that Defendants' conduct as alleged herein is unlawful and/or unfair;
3. An award to Plaintiff and the Class of actual, compensatory, and punitive damages, as proven at trial;
4. An award to Plaintiff and the Class of restitution of all monies deducted by Defendants as a result of their unlawful and/or unfair business practices;
5. An order enjoining Defendants from engaging in the unlawful and/or unfair business practices described herein;
6. An award to Plaintiff and the Class of reasonable attorneys' fees, costs, and pre- and post-judgment interest; and
7. Such further and other relief the Court deems reasonable and just.

////

**Class Action Complaint**     16

# JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated:  March 28, 2017          Respectfully submitted,

                                MCGUIRE LAW, P.C.
                                ZAVERI TABB, APC

                                By: s/ James A. Tabb
                                James A. Tabb

                                *Attorneys for Plaintiff Anthony Oliver and the Putative Class*

                                Email:  jimmy@zaveritabb.com