**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY OLIVER,<br><br>                                Plaintiff,<br>v.<br><br>FIRST CENTURY BANK, N.A., and STORED VALUE CARDS, INC. (d/b/a NUMI FINANCIAL),<br><br>                              Defendants. | Case No.: 17cv620-MMA (KSC)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 8] |

      Plaintiff Anthony Oliver brings this putative class action against Defendants First Century Bank, N.A. and Stored Value Cards, Inc. (d/b/a Numi Financial) ("Defendants"), alleging violations of his Fifth and Fourteenth Amendment rights and California state law. *See* Doc. No. 1. Defendants move to compel arbitration of Plaintiff's claims. *See* Doc. No. 8. Plaintiff filed an opposition to the motion, to which Defendants replied. *See* Doc. Nos. 16, 17. The Court took the matter under submission on the briefs pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 18. For the reasons set forth below, the Court **GRANTS** Defendants' motion and **STAYS** this action.

## BACKGROUND

This action arises out of events surrounding Plaintiff's arrest and subsequent detention in a county jail in Savannah, Georgia.[1] In the process of booking Plaintiff into custody, officers directed Plaintiff to deposit all cash on his person into an automatic teller machine ("ATM") located at the jail. The funds were then transferred into an inmate trust account for Plaintiff's use during his period of incarceration. At the time of his release, $985.00 remained in Plaintiff's inmate trust account. Plaintiff was given a pre-paid debit card, referred to as a "release card," issued by Defendants. Officers advised Plaintiff that he could access the full amount of his remaining funds by using the release card. Other than a PIN number, Plaintiff claims to have received no information regarding the terms and conditions of using the card. Accordingly, Plaintiff alleges that he was unaware that transaction/service fees would be debited from his account balance for each use of the card. Nor was he advised that a weekly maintenance fee would be deducted from his account balance.

Several months later, Plaintiff was once again detained at the county jail, forced to deposit his cash into an ATM at the jail, and received a pre-paid debit card upon release. Plaintiff was charged similar transaction/service fees for withdrawing funds, as well as a weekly maintenance fee. Based on these allegations, Plaintiff brings individual and class claims against Defendants pursuant to 42 U.S.C. § 1983, California Business and Professions Code Section 17200, *et seq.*, and common law.

The Cardholder Agreements that accompanied both release cards provided to Plaintiff include a broad arbitration provision. *See* Def. Exs. 3, 4 at ¶ 24. Invoking this provision, Defendant moves to compel arbitration. Defendants argue that Plaintiff's claims are subject to the terms and conditions of the release cards, including the

---

[1] The following allegations are set forth in Plaintiff's complaint, Doc .No. 1, and are not to be construed as findings of fact by the Court.

agreement to arbitrate. Plaintiff opposes the motion to compel, arguing that the arbitration provision in the Cardholder Agreements is invalid and unenforceable.

## DISCUSSION

### 1. Legal Standard

The Federal Arbitration Act ("FAA") provides that a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA espouses a general policy favoring arbitration agreements. *See AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Nevertheless, an arbitration clause may be challenged by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (internal quotation marks omitted).

A party moving to compel arbitration must show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide otherwise.'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986)); *see also Rent-A-Ctr.*, 561 U.S. at 78 ("'[Q]uestion[s] of arbitrability' thus include questions regarding the existence of a legally binding and valid arbitration agreement").

### 2. Analysis

The key issue as framed by the parties is whether a valid agreement exists between the parties to arbitrate disputes arising out of Plaintiff's use of the release cards. However, a close reading of the arbitration provision demonstrates that this is a question delegated in the agreement to the arbitrator:

> This agreement to arbitrate covers all Claims under this Agreement . . . including, but not limited to, Claims arising out of or related to . . . the validity, enforceability or scope of this Arbitration Provision or Agreement.

Def. Ex. 3 at ¶ 24(b)(1). This language "delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement," and in doing so "clearly and unmistakably indicates [the parties'] intent for the arbitrators to decide the threshold question of arbitrability." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting *Rent-A-Ctr.*, 561 U.S. at 68) (internal quotation marks omitted)).

"A delegation clause is enforceable when it manifests a clear and unmistakable agreement to arbitrate arbitrability, and is not invalid as a matter of contract law." *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 U.S. Dist. LEXIS 168370, at *4 (N.D. Cal. Oct. 11, 2017) (citing *Brennan*, 796 F.3d at 1130). Here, the delegation clause "clearly and unmistakably" demonstrates an intent to arbitrate arbitrability, and Plaintiff does "not contest the validity of the delegation provision in particular." *Rent-A-Ctr.*, 561 U.S. at 74. In fact, he does not mention it at all in his opposition to the motion to compel. As such, the Court "must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id*. at 72.

//
//
//
//
//
//
//
//

## Conclusion

Based on the foregoing, the Court **GRANTS** Defendant's motion to compel arbitration and **STAYS** this action. *See* 9 U.S.C. § 3. The Clerk of Court is instructed to administratively close the case. The parties must notify the court within seven (7) days of the conclusion of arbitration proceedings.

**IT IS SO ORDERED**.

DATE: November 16, 2017

_____
HON. MICHAEL M. ANELLO
United States District Judge